UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MARK A. WORKSMAN

                   Appellant,

        v.

CENTURY SPORTS, INC.,

                   Appellee.
----------------------------------------------------------------X

<u>For Online Publication Only</u>

**FILED
CLERK**

8/27/2018 11:22 am

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**<u>ORDER</u>**
16-CV-2447 (JMA)

**AZRACK, United States District Judge:**

      Currently pending before me are cross-appeals from the August 5, 2016 judgment of the Bankruptcy Court (Trust, Bankr. J.), which was entered after the Bankruptcy Court granted in part and denied in part a contempt motion (the "Contempt Motion") filed by appellee Century Sports, Inc. ("Century") against <u>pro se</u> appellant Mark Worksman.  Worksman was the principal of Rand International Leisure Products, LLC, the debtor in the underlying bankruptcy proceeding ("Debtor").  Century was a secured creditor that held a lien on all of the Debtor's assets.  In a lengthy oral ruling and subsequent written Order, the Bankruptcy Court found Worksman in contempt for some, but not all, of the allegedly contemptuous conduct at issue.  Specifically, the Bankruptcy Court found Worksman in contempt because, in violation of its orders, he:

    (1) issued checks, while the Debtor was in Chapter 11, from the Debtor's account to himself in the amount of $24,741, which Worksman alleged were reimbursements for expenses he paid;

    (2) transferred $60,406 from the Debtor's account to Worksman's wife on March 30, 2011, and refused to return that money until after the Contempt Motion was filed; and

    (3) diverted a portion of the Debtor's inventory during the Chapter 11 case to PRC industries.

(R. 2945–47.)  The Bankruptcy Court ordered Worksman to pay Century $81,338 to compensate Century for the attorney's fees it incurred in bringing the Contempt Motion, but denied Century's requests for additional damages.  Century then filed a motion for reconsideration, which the Bankruptcy Court denied.

On appeal, Century asserts that the Bankruptcy Court erred by not finding Worksman in contempt for a $150,115 withdrawal from a Citibank account and by not awarding Century damages in the same amount.  Century also challenges the Bankruptcy Court's decision not to award Century any compensation in connection with the inventory Worksman delivered to PRC Industries.  According to Century, the Bankruptcy Court should have awarded Century $189,000 to compensate Century for Worksman's contemptuous conduct in connection with that inventory.

On appeal, Worksman seeks a reversal or reduction of the $81,338 contempt award as well as various other forms of relief.  (See ECF No. 22 at 29–31.)

The Court assumes the parties' familiarity with the record below and recounts only those facts necessary to decide these appeals.  For the reasons stated below, the Bankruptcy Court's August 5, 2016 judgment is AFFIRMED.

**A.  <u>Standard of Review</u>**

**1.  Generally**

On appeal from a bankruptcy court's order, conclusions of law are reviewed <u>de novo</u> and findings of fact are reviewed for clear error.  <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 988 (2d Cir. 1990); <u>Ng v. Adler</u>, 518 B.R. 228, 233 (E.D.N.Y. 2014).

A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."  <u>In re Miner</u>, 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999) (quoting <u>United States v.</u>

United States Gypsum Co., 333 U.S. 364, 395 (1948)).  The clearly erroneous standard requires "[p]articularly strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify."  In re Pisculli, 408 F. App'x 477, 479 (2d Cir. 2011) (quoting In re Boyer, 328 F. App'x 711, 716 (2d Cir. 2009)).

Additionally, a bankruptcy court abuses its discretion when it commits a clear error of judgment or bases its decision on an erroneous view of the law or clearly erroneous factual findings.  Kinney v. Gallagher, 524 B.R. 455, 459 (W.D.N.Y. 2015).

"Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal."  In re Taneja, No. 17 CIV. 5618, 2018 WL 1831853, at *2 (S.D.N.Y. Apr. 16, 2018), appeal filed (2d Cir. Apr 26, 2018) (citing In re Lionel Corp., 29 F.3d 88, 92 (2d Cir. 1994)).

Finally, a pro se party's pleadings and briefs are liberally construed "to raise the strongest arguments they suggest."  Hamlett v. Santander Consumer USA Inc., 931 F. Supp. 2d 451, 455 (E.D.N.Y. 2013) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)).

### 2.  Civil Contempt

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016)

### 3.  Standard for Reviewing Motions for Reconsideration

When seeking reconsideration, a movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision."  In re Asia Glob. Crossing, Ltd., 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (citations and internal marks

omitted).  "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice."  Id. (citations omitted).

"Denials of motions for reconsideration are reviewed only for abuse of discretion." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012).  Generally, courts will not consider "an argument on appeal that was raised for the first time below in a motion for reconsideration," though this is only a prudential rule.  Id. at 53 (quoting Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 159 (2d Cir. 2003)).

## B.  **Worksman's Appeal**

Worksman's various challenges to the Bankruptcy Court's $81,338 contempt award are all meritless.  Worksman's arguments fall into two general categories.  One, he challenges the propriety of the Bankruptcy Court's contempt ruling by arguing that the Bankruptcy Court's findings of contempt and accompanying award were erroneous.  Two, Worksman challenges the validity of the Bankruptcy Court orders that he violated as well as the validity of the entire bankruptcy proceeding, arguing that the Bankruptcy Court erred when it denied a motion to dismiss filed by the Debtor at the outset of the case.  None of these arguments have any merit.

### 1.  **The Bankruptcy Court's Contempt Ruling**

The Bankruptcy Court's factual findings underlying its contempt finding and decision to award $81,338 for that contempt were not clearly erroneous and were amply supported by the record.  As the Bankruptcy Court explained in its analysis of the $60,406 wire transfer, Worksman's own damning admissions established "beyond question that [he] clearly understood that the $60,000 wire transfer ran afoul of the direct orders of this Court but he chose to do so anyway."  (R. 2953.)

4

The Court has considered all of the numerous arguments raised by Worksman in his appellate papers concerning the Bankruptcy Court's contempt ruling.  It is unnecessary to address each of these arguments individually.  Below are some examples of the types of meritless arguments advanced by Worksman.

Worksman asserts that the Bankruptcy Court's cash collateral orders permitted the Debtor to reimburse him for expenses that he allegedly paid out of his own pocket to benefit the Debtor.  This argument is meritless.  The Bankruptcy Court's written cash collateral orders and oral rulings clearly prohibited the Debtor from making any payments to insiders, including Worksman.  (See, e.g., R. 25, 39; R. 292 ("[I]t's the Court's understanding that the budget does not include any payments to Mr. Worksman for compensation or otherwise"); R. 428 ("I'm essentially rolling that prior ruling forward . . . . That includes no payments, no compensation to the insiders . . . .").)

As another example, Worksman asserts that the Bankruptcy Court erred in stating that he did not pay back the $60,406 transfer until after the Contempt Motion was filed.  That finding, however, was amply supported by the record.  Relatedly, Worksman suggests that his conduct concerning the $60,406 should be excused because he allegedly made efforts to return the money prior to the filing of the Contempt Motion.  Even assuming for the sake of argument that Worksman's version of the events concerning the return of that money is correct, that conduct in no way excuses Worksman's initial transfer of that money on March 30, 2011, which was a willful and blatant violation of the Bankruptcy Court's orders.  The Bankruptcy Court did not err in awarding $81,338 in attorney's fees for the cost of bringing the Contempt Motion, particularly given Worksman's multiple instances of contemptuous conduct.

As an another example, Worksman points out that the transcript for the Bankruptcy Court's ruling conference discusses a "security agreement which rented to Century a lien in all of Rand's

. . . assets." (R. 2918 (emphasis added)). Worksman asserts that this shows that the Bankruptcy Court misunderstood the background of the case. This, however, is obviously a transcription error as the Bankruptcy Court clearly was referring to liens that were "granted" (not "rented") to Century. Workman's attempt to challenge the Bankruptcy Court's findings based on an obvious transcription error is frivolous.

In sum, the Bankruptcy Court's contempt ruling was neither clearly erroneous nor an abuse of discretion.

### 2. The Validity of the Bankruptcy Court's Other Orders

In addition to challenging the contempt ruling itself, Workman also advances a number of other meritless arguments, such as his attacks on the validity of the bankruptcy proceedings and the validity of the orders underlying the Bankruptcy Court's contempt ruling.

Worksman argues that the contempt judgment should be overturned because: (1) the Bankruptcy Court erred, at the outset of the case, in denying the Debtor's motion to dismiss the involuntary Chapter 7 petition and request to abstain (the "Motion to Dismiss"); and (2) the Bankruptcy Court erred in entering the cash collateral orders that the Bankruptcy Court found Worksman violated in its contempt ruling. With respect to the Motion to Dismiss, Worksman's argument appears to be that the cash collateral orders that he violated are invalid because, according to Worksman, the Chapter 7 petition should have been dismissed at the outset.

As explained below, not only are these arguments procedurally barred on various grounds, but they are also substantively meritless.

### i. Procedural Bars

When a party is found in civil contempt, that party can, in at least some circumstances, overturn the civil contempt judgment by showing that the underlying order that it violated was

invalid.  See United States v. United Mine Workers, 330 U.S. 258, 294–95 (1947), Bethlehem Mines Corp. v. United Mine Workers of Am., 476 F.2d 860, 864–67 (3d Cir. 1973).  However, to do so, the party found in contempt must have first properly challenged the underlying order in the district court and properly appealed both the contempt ruling and the underlying order.  Bethlehem Mines, 476 F.2d 860 at 864–67.  Here, Worksman's Notice of Appeal indicates that he is only appealing the Bankruptcy Court's April 29, 2016 order that required "Payment of all movants attorney's fees."  (ECF No. 1 at 3.)  Because Worksman did not appeal the cash collateral orders underlying the contempt ruling, he cannot challenge the validity of those orders as part of this appeal.  Moreover, it does not appear that Worksman ever raised his current objections to the Bankruptcy Court's cash collateral orders at the time that those orders were entered.

Even if the above principles did not preclude Worksman's challenges to the validity of the Bankruptcy Court's cash collateral orders, he is likely time-barred from challenging the validity of those orders (and the order denying the Motion to Dismiss) as part of this appeal.  To the extent that those orders constituted final appealable orders under 28 U.S.C. § 158(a)(1), the time for appealing for those orders has clearly lapsed and Worksman is barred from challenging their validity in this appeal.

Finally, even assuming, for the sake of argument, that it might be permissible for Worksman to dispute the validity of the cash collateral orders as part of the instant appeal, Worksman cannot overturn the contempt ruling on appeal by challenging the Bankruptcy Court's denial of the Motion to Dismiss for the simple reason that he was not found in contempt for violating the Bankruptcy Court's order denying the Motion to Dismiss.  Worksman has not cited any authority suggesting that such a collateral attack on a contempt finding is permissible.  The

Bankruptcy Court clearly had jurisdiction to enter its contempt judgment. The instant appeal is not an appropriate forum for Worksman to try to re-litigate the Motion to Dismiss.

>        *ii. Merits*

Even if the procedural bars discussed above did not foreclose Worksman's challenges to the validity of the Bankruptcy Court's order denying the Motion to Dismiss and its cash collateral orders, those challenges also clearly fail on the merits.

The Bankruptcy Court denied the Motion to Dismiss in a lengthy and thorough oral ruling after a hearing that included live testimony. (See Transcript of August 31, 2010 Proceeding, In re and International Leisure Products, LLC, No. 8-10-71497 (E.D.N.Y. Bankr.) (hereinafter "Bankruptcy Docket"), ECF No. 175.) Worksman has not shown that the Bankruptcy Court's factual findings were clearly erroneous or that it abused its discretion in denying the Motion to Dismiss. I note that, in attempting to challenge the Bankruptcy Court's denial of the Motion to Dismiss, Worksman relies on certain evidence that was not even before the Bankruptcy Court at the time that it decided the Motion to Dismiss in 2010, including information related to the Final Report filed by the Trustee in December 2014. None of that information shows that the Bankruptcy Court erred in denying the Motion to Dismiss. Moreover, even if any of this information was relevant, the Bankruptcy Court had no obligation to reconsider its denial of the Motion to Dismiss years after that order was entered and the court had spent countless hours on this case.

As to the cash collateral orders, Worksman appears to challenge the validity of the cash collateral orders by arguing that he either "owned" that collateral or held a lien on that collateral that had priority over Century's lien. The Bankruptcy Court found to the contrary, (R. 2958), and Worksman's arguments on these points are frivolous. Worksman's assertion that he somehow

obtained a lien that was held by Wells Fargo—apparently because he also personally guaranteed the Wells Fargo loan—is nonsensical, utterly meritless, and is not supported by any of the transaction documents cited by Worksman.  (See also R. 2525 (testimony of Worksman in which he admitted that he signed schedules for the Debtor that did not list himself as a secured creditor).)

Equally meritless is Worksman's assertion that Century did not have a valid perfected lien on the cash collateral.  (See Bankruptcy Docket, ECF Nos. 206-2, 206-3.)  Similarly, Worksman's focus on a "Pledge Agreement" concerning the membership interests of the Debtor, (see ECF No. 19 at 11–13), is irrelevant to the cash collateral orders as the record makes clear that Century obtained a priority lien on all of the Debtor's assets in a separate Security Agreement,  (see, e.g. R. 2883; Bankruptcy Docket, ECF. No. 206-2).  The cash collateral orders were valid and, as explained earlier, the Bankruptcy Court did not err in finding that Worksman's violation of those orders warranted a contempt finding and a fee award.

Finally, to the extent that Worksman seeks additional relief as part of his appeal, including the "return [of] Cash Collateral to Worksman that was unlawfully seized," (ECF No. 16 at 43), those requests are denied are meritless.

## C. Century's Cross-Appeal

### 1. The $150,115 Withdrawal from the Citibank Account

The Bankruptcy Court found that there was not clear and convincing proof that Worksman violated its orders when Citibank withdrew $150,115 from the Debtor's account in order to repay a $150,000 loan from Citibank that was secured by both Worksman's personal guarantee as well as by a personal savings account held by Worksman's wife.  (R. 2675, 2677).  Specifically, the Bankruptcy Court found that there was not clear and convincing proof that Worksman caused Citibank to withdraw the money from the Debtor's account.  (R. 2705.)  In its oral ruling, the

Bankruptcy Court also explained that although Worksman should have—but failed to—include the Citibank loan on the Debtor's schedules, "that is not the issue for today." (R. 2703.) In denying Century's motion for reconsideration, the Bankruptcy Court indicated that, contrary to Century's contention, the court did not overlook Worksman's failure to seek recovery of the Citibank withdrawal when the court declined to hold Worksman in contempt in connection with that withdrawal. (Order Denying Motion for Reconsideration ("Reconsideration Order"), ECF No. 12-6.)

Century challenges the Bankruptcy Court's findings in two respects. First, Century asserts that the Bankruptcy Court erred in concluding that Century failed to show by clear and convincing evidence that Worksman caused the Citibank withdrawal. Second, Century contends that, even if Worksman did not cause the Citibank withdrawal, the Bankruptcy Court should have still found him in contempt based on his failure to seek recovery of the Citibank withdrawal and his failures to disclose the Citibank loan, account, and withdrawal.

As to the first point, contrary to Century's argument, the Bankruptcy Court's finding that Century failed to prove, by clear and convincing evidence, that Worksman caused the withdrawal, was not clearly erroneous.

Century asserts, among other things, that the Bankruptcy Court erred in stating that the withdrawal occurred on September 28, 2010, (R. 2921), when a Citibank account statement indicates that the withdrawal occurred on September 30, 2010, (R. 2726), the day after the Bankruptcy Court issued a ruling restricting the use of cash collateral on September 29, 2010, (R. 2921–2922.)

Century argues that the timing of the Citibank withdrawal is critical because it shows that the withdrawal occurred "one day _after_ the first of the many Court rulings restricting the use of Century's cash collateral." (Century Opening Br. at 10, ECF No. 14 (emphasis in original).)

Even assuming, for the sake of argument, that the Bankruptcy Court misidentified the date of the withdrawal, that does not undermine the Bankruptcy Court's ultimate factual finding that Worksman did not cause the withdrawal. Notably, later in its ruling, the Bankruptcy Court acknowledged that the Citibank withdrawal may have occurred _after_ the court's September 28, 2010 conversion order, which, as Century stressed below, also prohibited the Debtor "from disbursing, removing, or transferring any assets of the estate." (R. 2331.) Thus, the Bankruptcy Court already considered the fact that the withdrawal may have occurred after a court order was issued prohibiting transfers, but still found that Worksman did not cause the withdrawal.[1] Additionally, even assuming that the withdrawal did occur on September 30—two days after the Bankruptcy Court's September 28 conversion order and one day after the September 29, 2010 conference where the court limited the use of cash collateral—those facts do not render clearly erroneous the Bankruptcy Court's ultimate finding that Worksman did not cause the withdrawal. The suspicious timing cited by Century is, at best, circumstantial evidence that Worksman was responsible for the withdrawal. The record, however, also included other evidence that Worksman did not cause the withdrawal, including Worksman's own testimony on this point. (_See_ R. 1141, 1154, 2948.) The Bankruptcy Court did not clearly err in finding that Century failed to prove by clear and convincing evidence that Worksman caused the Citibank withdrawal.

---

[1] The transcript from the Bankruptcy Court's oral ruling states: "Citibank clearly did withdraw the $150,115.04 from Rand's bank account prior to just shortly after the order for relief in the Chapter 11 . . . ." (R. 2703 (emphasis added).) The highlighted passage appears to have been transcribed incorrectly. The Bankruptcy Court likely stated "prior to [or] just shortly after." (R. 2703.)

Century's arguments concerning Worksman's failure to seek recovery of the Citibank withdrawal and his failure to disclose information are also unpersuasive.

Century asserts that the Bankruptcy Court erroneously focused on whether Worksman was himself responsible for the withdrawal and failed to properly consider that: (1) both before and after the withdrawal, Worksman failed to disclose the Citibank loan, account, and withdrawal; and (2) after the withdrawal, Worksman failed to take appropriate action once he learned about Citibank's withdrawal from the account, such as demanding that Citibank return the money. As explained below, Century waived these arguments by failing to squarely raise them in its contempt motion. Moreover, these arguments fail on the merits.

As a threshold matter, Century's argument that Worksman should be found in contempt for failing to disclose information and for failing to seek recovery of the Citibank withdrawal was not squarely raised below in Century's motion papers and, thus, is waived.[2] Century's Proposed Conclusions of Law argued that the Bankruptcy Court's orders "prohibited the Debtor from undertaking (or directing others to undertake) affirmative acts paying any amounts to Mark Worksman" and precluded the Debtor from transferring any assets of the estate. (R. 2331 (emphasis added); see also 2330.) Century asserted that Worksman disregarded those orders when he "caused the Debtor to repay a Citibank loan, which he and his wife had personally guaranteed, by allowing Citibank to be paid more than $150,000 from a bank account in the Debtor's name." (R. 2331–32 (emphasis added). Although Century also noted that "[t]his Debtor bank account was **omitted** from the Schedules and **never** disclosed to this Court or any creditor or party in interest," (R. 2332). Century never attempted to explain how those failures to disclose violated the

---

[2] Even if Century did not waive these arguments, at the very least, it is difficult to see how the Bankruptcy Court's ruling could be considered clearly erroneous or an abuse of discretion when Century's own motion papers did not squarely argue that Worksman should be found in contempt for failing to disclose information and failing to seek recovery of the Citibank withdrawal.

Bankruptcy Court's orders and did not squarely argue that Worksman should be found in contempt on that basis. Instead, Century's Proposed Conclusions of Law relied on Worksman's failures to disclose as circumstantial evidence to show "consciousness of wrongdoing" in connection with Workman's alleged <u>withdrawal</u> of the $150,000.[3] (R. 2333.) Additionally, although Century's appellate brief and motion for reconsideration argue that Worksman's failure to seek recovery of the withdrawal from Citibank is a basis for contempt, Century did not advance such an argument in the Proposed Conclusions of Law it submitted to the Bankruptcy Court as part of the Contempt Motion. Relatedly, in its papers for the Contempt Motion below, Century never argued that Worksman should be held in contempt even if he did not cause the Citibank withdrawal. Only in its appellate brief (and in its reconsideration motion) does Century argue that "[e]ven if Worksman himself did not cause the transfer that violated the cash collateral order, he did not diligently comply with the order, for example by demanding that Citibank return the funds." (Century Opening Br. at 21.) Given Century's failure to squarely raise these arguments in its motion papers below, the Court finds those arguments have been waived.

Moreover, even if Century's motion papers sufficiently alerted the Bankruptcy Court to Century's argument that, based on his other conduct, Worksman should have been held in contempt even if he did not cause the Citibank withdrawal, that argument fails on the merits. The Bankruptcy Court's decision not to hold Worksman in contempt in connection with the Citibank withdrawal was neither clearly erroneous nor an abuse of discretion. Century has not identified how Worksman's failures to disclose or failure to seek return of the Citibank withdrawal violated the Bankruptcy Court's orders. Nor has Century pointed to any case law indicating that such

---

[3] Century also argued that by "failing to disclose the existence of the Undisclosed Citibank Account, and by transferring the Debtor's assets to satisfy the Citibank Loan on which Worksman and his wife were personally liable, Worksman also violated his fiduciary duty to the estate and its creditors." (R. 2309.) Century, however, did not assert that such a breach of fiduciary duty is itself a basis for a contempt finding.

13

failures constitute contempt.   Moreover, Century appears to misapprehend the standard for contempt when it asserts that Worksman should be found in contempt because his failure to demand that Citibank return the withdrawn funds shows that he failed to "diligently attempt to comply" with the court's orders.   (Century Br. at 21.)  Century first had to prove that Worksman knowingly violated a court order that was clear and unambiguous.  See CBS Broad. Inc., 814 F.3d at 98.  If that showing was made, Century also had to prove that Worksman did not diligently attempt in a reasonable manner to comply with the order.  See id.  However, the Bankruptcy Court concluded that, with respect to the Citibank withdrawal, the evidence failed to show that Worksman knowingly violated a court order in the first instance and, as explained above, that conclusion was not clearly erroneous.  Century's suggestion that, even if Worksman did not cause the withdrawal, the cash collateral orders obligated him to make diligent efforts to try to recover those funds is unavailing.  Century does point to a specific provision of any order from the Bankruptcy Court that required Worksman to take such action.

In light of analysis above, it is clear that the Bankruptcy Court's decision denying reconsideration as to the Citibank withdrawal was also not an abuse of discretion.

Finally, even assuming for the sake of argument that Worksman should have been found in contempt in connection with the $150,115 Citibank withdrawal, for the reasons explained below, Century would still not be entitled to any additional damages.

## 2.  The Bankruptcy Court's Refusal to Award Damages Beyond Attorney's  Fees

Century seeks an additional $189,000 in damages to compensate it for Worksman's conduct in connection with inventory Worksman delivered to PRC Industries.  Although the Bankruptcy Court found Worksman in contempt for this conduct, it declined to award these additional damages, relying on:  (1) a settlement between Worksman and the Estate (the

14

"Worksman Settlement"); (2) a settlement between Century and the Estate (the "Century Settlement"); and (3) the fact that the Estate had already been fully administered. The Bankruptcy Court reasoned that the Worksman Settlement released all of the Estate's claims against Worksman and, thus, "there is no manner by which this Court can restore any dissipated cash collateral which was property of the bankruptcy estate back to the bankruptcy estate." (R. 2962–63.) The Bankruptcy Court went on to explain that even if the Court could order Worksman to return any dissipated cash collateral to the Estate, the Century Settlement extinguished Century's liens and claims against the Bankruptcy Estate. (R. 2962.) The Bankruptcy Court was not "convinced" that Century had "some derivative right" to directly recover the cash collateral that "would not flow through the bankruptcy estate." (R. 2962.) The Bankruptcy Court also found that the Estate did not abandon the Estate's claims against Worksman to Century, noting that the only abandonment that occurred through a court order involved certain inventory that was abandoned to Century. (R. 2962–63.)

Century moved for reconsideration, arguing that the Bankruptcy Court overlooked the fact that the claims of the Estate and Century concerning the contempt motion had not been released as part of either settlement. The Bankruptcy Court denied reconsideration, explaining that the reservation of rights in the Century Settlement that allowed Century to continue to prosecute the contempt proceeding did not (and could not) "alter the burden of proof necessary to find Mr. Worksman in contempt [nor] vary the relief potentially available for such contempt." (Reconsideration Order at 4, ECF No. 12-6.)

On appeal, Century argues that the Bankruptcy Court erred in relying on the Worksman Settlement, which did not release the Estate's contempt claims. Century also maintains that its own settlement with the Estate allowed it to "proceed directly against Worksman to recover the

15

value of the property that was formerly subject to Century's lien."  (Century Opening BR. at 23.)

The Court assumes that review of the impact of the language in the Worksman and  Century Settlements on Century's claims is de novo.

The record makes clear that the Worksman Settlement did not resolve the Estate's contempt claims and that the Century Settlement preserved Century's right to prosecute the Contempt Motion.  However, that does not establish that the Bankruptcy Court erred in refusing to award Century additional damages.

Century's argument on appeal is premised on the flawed assumption that, under the terms of the Century Settlement, "the estate's otherwise-preserved claims against Worksman under the Contempt Motion *were transferred exclusively to [Century]*, including any recovery therefrom." (Century Opening Br. at 8 (emphasis added); see also id. ("the right to recover the value of the stolen inventory . . . was *no longer* property or a right of the estate" (emphasis in original)). Century advanced the same flawed argument below.  (See also R. 2333 (arguing that Century's interest in the contempt motion "flows from the Trustee"); R. 2660 (arguing that the "estate's right in the Contempt motion were turned over to [Century]").

The Contempt Motion was originally pursued as a joint motion by both the Trustee and Century.  The Trustee stopped pursuing the Contempt Motion after entering into the Century Settlement, which provides that:

> (i) the Contempt Motion shall be deemed amended to delete the Trustee as a party to the Contempt Motion; (ii) Century shall have the right to continue the Contempt Motion as the sole moving party; (iii) the Estate shall have no further rights to any remedy or recovery under the Contempt motion.

(R. 2872.)  These provisions simply allowed Century to continue to prosecute the Contempt Motion in its own name and to receive any recovery from the motion to which Century itself would be entitled.  Furthermore, this settlement precluded the Estate from receiving any recovery in the

event that the Century prevailed. However, contrary to Century's argument, the Century Settlement did not transfer the Estate's interest in the Contempt Motion to Century. The Century Settlement contains no language indicating that the Estate was assigning or transferring its interest or claims in the Contempt Motion to Century.[4] As the Bankruptcy Court indicated in the Reconsideration Order, the Century Settlement merely reserved to Century the right to prosecute its own interest in the Contempt Motion. Century's argument on appeal fails as the critical assumption underlying Century's argument is not supported by the record.

**D.  Conclusion**

For the reasons stated above, the Bankruptcy Court's August 5, 2016 judgment is AFFIRMED.

The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45, 82 (1962).

The Clerk of Court is directed to mail a copy of this order to the pro se appellant.

**SO ORDERED.**

Dated:  August 27, 2018
Central Islip, New York

        /s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[4] On appeal, Century has not argued that the Century Settlement effected an abandonment of the Estate's interest in the Contempt Motion to Century.